IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BINARY SEMANTICS LIMITED,　　:
BINARY SEMANTICS, INC.　　　　　:
　　　　　　　　　　　　　　　　　　:　　　Civil Action No. 4: 07-CV-1750
　　　　　　　　　　　Plaintiffs,　:
　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:　　　(Judge McClure)
MINITAB, INC., et.al.,　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants. :
　　　　　　　　　　　　　　　　　　:

**M E M O R A N D U M**

March 20, 2008

**BACKGROUND:**

On September 25, 2007, plaintiffs Binary Semantics Limited and Binary

Semantics Inc. (collectively "Binary") commenced this civil action with the filing

of a complaint against defendants Minitab, Inc., Barbara Ryan, Bruce Pincus,

Patrick Sheehan, Asha Gopinath Menon, Malvinder Singh, and John Does 1-10.  In

its complaint, Binary sets forth causes of action based upon the Racketeer

Influenced and Corrupt Organizations Act (Counts I and II), the Computer Fraud

and Abuse Act (Count III), Unlawful Use of a Computer under the Pennsylvania

Penal Code (Count IV), Computer Theft under the Pennsylvania Penal Code

(Count V), Unlawful Duplication under the Pennsylvania Penal Code (Count VI),

1

Computer Trespass under the Pennsylvania Penal Code (Count VII), Theft of

Trade Secrets under the Pennsylvania Penal Code (Count VIII), Intentional

Interference with Prospective Economic Advantage (Count IX), Negligent

Interference with Prospective Economic Advantage (Count X), Unfair Competition

(Count XI), Procuring Information by Improper Means (Count XII), Conversion

(Count XIII), Unjust Enrichment/Restitution (Count XIV), Fraud (Count XV),

Fraud/Fraudulent Inducement (Count XVI), Breach of Fiduciary Duty (Count

XVII), Civil Conspiracy (Count XVIII), and claim for "An Accounting" (Count

XIX).

On December 17, 2007, defendants Minitab, Barbara Ryan, Bruce Pincus,

and Patrick Sheehan (collectively "the Minitab defendants") filed a motion to

dismiss.  (Rec. Doc. No. 18.)  Opposing and reply briefs have been filed and the

matter is ripe for disposition.  Now, for the following reasons, the court will grant

in part and deny in part the motion.


**DISCUSSION:**

## I.  Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), the court must view all allegations stated in the complaint as

true and construe all inferences in the light most favorable to plaintiff.  Hishon v.

King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183

(3d Cir. 1993).  In ruling on such a motion, the court primarily considers the

allegations of the pleading, but is not required to consider legal conclusions alleged

in the complaint.  Kost, 1 F.3d at 183.  At the motion to dismiss stage, the court

considers whether plaintiff is entitled to offer evidence to support the allegations in

the complaint.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).  A

complaint should only be dismissed if, accepting as true all of the allegations in the

complaint, plaintiff has not plead enough facts to state a claim to relief that is

plausible on its face.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1960

(2007).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation

by dispensing with needless discovery and factfinding."  Neitzke v. Williams, 490

U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where

there is a "dispositive issue of law."  Id. at 326.  If it is beyond a doubt that the

non-moving party can prove no set of facts in support of its allegations, then a

claim must be dismissed "without regard to whether it is based on an outlandish

legal theory or on a close but ultimately unavailing one."  Id. at 327.

## II.  Allegations in the Complaint

3

The following allegations are taken from Binary's lengthy complaint.  (Rec. Doc. No. 1.)  Defendant Minitab is a software development company.  (Id. ¶ 2.) Plaintiff Binary is an Indian company that sells and supports software to the Indian market.  (Id. ¶ 1.)  In 1999, Minitab began utilizing Binary's services to distribute Minitab products in India.  (Id. ¶ 3.)  In 2001, Binary and Minitab entered into a contract whereby Binary would promote, market, and sell its products and licenses in India and would also offer maintenance, support, and servicing for Minitab's products.  (Id. ¶ 4.)  The contract could be renewed yearly by the parties and could be terminated by either party for any reason upon thirty-days written notice.  (Id. ¶¶ 6, 63.)

In early 2007, Minitab decided to open offices in India to promote its products and services directly to the end-users and avoid paying fees to Binary. (Id. ¶¶ 15-16.)  Still, Minitab realized that opening such an office would take a long period of time and would require knowledge of the Indian market place and experience in promoting and selling software products and services in India.  (Id. ¶ 17.)  Therefore, plaintiff alleges that Minitab decided to target defendant Asha Gopinath Menon, an employee of Binary, and induce her to come to Minitab and bring other Binary employees.  (Id. ¶ 18.)  Minitab also induced Menon to steal Binary's trade secrets and give them to Minitab.  (Id.)  Plaintiff further alleges that

4

Menon took certain confidential and proprietary information from Binary at Minitab's direction and gave it to Minitab. (<u>Id.</u> ¶ 143.) On June 20, 2007, after receiving the information from Menon, Minitab terminated the contract. (<u>Id.</u> ¶ 154.) The same day, Minitab publicly announced its intention to open offices in India. (<u>Id.</u> ¶ 155.)

### III. Defendants' Motion to Dismiss

In their motion, the Minitab defendants essentially argue that plaintiff fails to state a claim with respect to each count of the complaint.

<u>A. RICO Claims</u>

Defendants argue that plaintiff fails to state a claim with respect to plaintiff's RICO claim in Count I and its RICO conspiracy claim in Count II of the complaint. (Rec. Doc. No. 19, at 12-20.) Specifically, defendants argue that plaintiff has not alleged a pattern of racketeering activity or injury. (<u>Id.</u>)

18 U.S.C. § 1964(c) states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court. . ." Thus, to prove a civil RICO claim, a plaintiff must establish: 1) a violation of 18 U.S.C. § 1962; 2) an injury to the plaintiff's business or property; and 3) that the RICO violation was the proximate cause of the injury. <u>Holmes v. Securities Investor Protection Corp.</u>, 503

U.S. 258, 265-268 (1992)); Dongelewicz v. First Eastern Bank, 80 F.Supp.2d 339, 344 (M.D.Pa. 1999) (McClure, J.) (citations omitted).  To establish a violation of § 1962, a plaintiff must prove: 1) the conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); Dongelewicz, 80 F.Supp.2d at 444-45 (citation omitted).

A "pattern of racketeering activity" is the occurrence of at least two acts of racketeering activity, known as predicate acts and enumerated in the statute, within a period of ten years.  Dongelewicz, 80 F.Supp.2d at 445 (citation omitted). Furthermore, plaintiff must show that the predicate acts are related and that they amount to or pose a threat of continued criminal activity.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412 (quoting H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989)).  In other words, to establish a pattern of racketeering activity, a plaintiff must satisfy both a relatedness and a continuity test.  Id.  Predicate acts are related when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 609 (3d Cir. 1991) (quoting H.J. Inc., 492 U.S. at 239-40).  Furthermore, continuity is "both a closed- and open-ended conduct, referring to a closed period of repeated conduct, or to past conduct

6

that by its nature projects into the future with a threat of repetition." Id. (quoting

H.J. Inc., 492 U.S. at 241).  To established "closed-ended" continuity, the predicate

offenses must occur over a "substantial period of time."  Id. (quoting H.J. Inc., 492

U.S. at 242).  To establish "open-ended" continuity, there must be a "threat of

continuity."  Id. at 609-10 (quoting H.J. Inc., 492 U.S. at 241).  A "threat of

continuity" exists when the predicate acts are defendant's "regular way of doing

business" and defendant operates a "long-term association that exists for criminal

purposes."  Id. at 610 (quoting H.J. Inc., 492 U.S. at 241).

     Defendants' primary argument with respect to plaintiff's RICO claim is that

plaintiff has not alleged a pattern of racketeering activity because plaintiff is unable

to establish the continuity requirement of such a claim.  (Rec. Doc. No. 19, at 15-

18.)  We agree.  Plaintiff is unable to establish closed-ended continuity because the

complaint only alleges predicate acts that occur over the course of 6 months.

Specifically, the earliest predicate acts are alleged to have occurred in "early 2007"

when Minitab contacted defendant Menon to explore the possibility of her coming

to work for Minitab and bringing trade secret information with her.  (Rec. Doc. No.

1, ¶¶ 21, 23.)  The latest predicate acts occur in June of 2007 with defendant

Menon actually taking the trade secret information and bringing it to Minitab and

Minitab's subsequently giving 30-days notice of termination of the contract with

Binary.  (Id. ¶¶ 132-60.)  Thus, there is at most a period of activity of six months if we assume that "early 2007" is the beginning of January.  As we have mentioned, under the closed-ended theory, the predicate acts must occur over a substantial period of time.  We have reviewed various Third Circuit cases and find that the Third Circuit has consistently held that several periods of time longer than six months do not constitute a substantial period of time.  See Hughes, 945 F.2d at 612 (holding that twelve months is not a substantial period of time); Kehr Packages, Inc. v. Fidelcor, 926 F.2d 1406, 1418 (3d Cir. 1991) (holding that eight months was not a substantial period of time); Hindes v. Castle, 937 F.2d 868, 875 (3d Cir. 1991) (eight month period not substantial).  Furthermore, we note that we have been unable to find and plaintiff has not cited a single case from any district or circuit which has held that a period of time of six months or less is a substantial period of time under the closed-ended theory of continuity.  Therefore, we find that the six month period of alleged predicate acts is insufficient to establish continuity under a closed-ended theory.

Furthermore, we find that plaintiff is unable to satisfy the open-ended theory of continuity.  Although plaintiff argues that there is a continuing threat of continuity based on the fact that defendants will continue to use plaintiff's trade secrets (Rec. Doc. No. 27, at 20-21), we do not find that this is sufficient to

establish a "threat of continuity."  As we have mentioned, a "threat of continuity"

exists when the predicate acts are defendant's "regular way of doing business" and

defendant operates a "long-term association that exists for criminal purposes."

Hughes, 945 F.2d at 610 (quoting H.J. Inc., 492 U.S. at 241).  Plaintiff has cited

two cases from districts outside of this circuit which have found that use of stolen

trade secrets is sufficient to show a threat of continuity in circumstances similar to

the allegations in the instant complaint.  General Motors Corp. v. Ignacio Lopez de

Arriortua, 948 F.Supp. 670, 678 (E.D.Mich. 1996); Gould, Inc. v. Mitsui Mining &

Smelting Co., 750 F.Supp. 838 (N.D.Ohio 1990).  We respectfully disagree with

the rulings of these courts, and believe that the use of stolen trade secrets is not

sufficient to constitute a threat of continuity.  As a preliminary matter, we believe

that using trade secrets is quite different from the initial act of stealing them.  In

fact, we believe that the theft of trade secrets necessarily implies that they will be

used.  Therefore, under plaintiff's theory, every misappropriation of trade secrets

could result in a RICO claim.  This would surely expand the scope of the statute

beyond what it was intended to reach.  If plaintiff's complaint were to allege that

defendants would continue to steal plaintiff's trade secrets, as opposed to use those

which have already been stolen, then there may well be a threat of continuity, but

that is not the case here.  Furthermore, plaintiff has not addressed the multitude of

cases from district courts within this circuit which have reached conclusions

contrary to General Motors and Gould.  See Clement Communications, Inc. v.

American Future Systems, Inc., Civ. No. 89-6280, 1990 WL 106762 at * 6

(E.D.Pa. July 19, 1990) (McGirr Kelly, J.) (finding that use of allegedly stolen

trade secrets not sufficient to constitute a threat of continued criminal activity);

Forbes v. Eagleson, Civ. No. 95-7021, 1996 WL 420829 at * 2 (E.D.Pa. July 23,

1996) (O'Neill, J.) (stating that "further use or profit from a previously obtained

item would not constitute a further predicate act"); National Risk Management,

Inc. v. Bramwell, Civ. No. 92-4366, 1992 WL 368370 at * 4 (E.D.Pa. Dec. 3,

1992) (Newcomer, J.) (finding that mere fact that copyrighted material will be used

in the future does not establish a threat of continued criminal activity); Plater-

Zyberk v. Abraham, Civ. No. 97-3322, 1998 WL 67545 at * 10 (E.D.Pa. Feb. 17,

1998) (Hutton, J.) (stating that "a plaintiff may not rely on the defendants' retention

or use of his assets to establish open-ended continuity").  Therefore, we find that

plaintiff is unable to establish continuity under an open-ended theory.

Having concluded that plaintiff's complaint is insufficient to establish the

continuity of the predicate acts, we find that plaintiff has failed to state a claim

under RICO because it has not alleged a pattern of racketeering activity.

Furthermore, we note that Count II states a claim of conspiracy under RICO, which

necessarily fails due to the failure to state a claim under RICO in Count I.

Therefore, we will dismiss counts I and II of the complaint.

B.  Computer Fraud and Abuse Act Claim

Defendants also argue that plaintiff has failed to state a claim under the

Computer Fraud and Abuse Act ("CFAA") because plaintiff has failed to allege

that any of the Minitab defendants accessed a protected computer.  (Rec. Doc. No.

19, at 20-23.)  Specifically, they argue that plaintiff has only alleged that defendant

Asha accessed a protected computer, not any of the Minitab defendants.  (Id. at 21-

22.)

A claim under § 1030(a)(4) of the CFAA has four elements: 1) defendant

accessed a protected computer; 2) without authorization or by exceeding such

authorization as was granted; 3) did so "knowingly" and with "intent to defraud";

and 4) as a result has furthered the intended fraud and obtained anything of value.

P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC., 428

F.3d 504, 508 (3d Cir. 2005) (citing 18 U.S.C. § 1030(a)(4)) (other citation

omitted).

We believe that plaintiff's allegations are sufficient to state a claim under the

CFAA against the Minitab defendants.  Although the complaint alleges that

defendant Asha was the individual who actually accessed the protected computer,

the allegations make it clear that she was acting at the direction of Minitab when she did so.  Specifically, the complaint alleges that Minitab targeted defendant Asha in an attempt to bring her and other Binary employees as well as Binary's trade secrets to Minitab.  (Rec. Doc. No. 1, ¶ 18.)  Furthermore, it alleges that defendant Asha did in fact steal plaintiff's trade secrets and did so by accessing a protected computer.  (Id. ¶¶ 69-76, 235-40.)  Finally, it alleges that these trade secrets were given to Minitab by Asha.  (Id. ¶¶ 132-51.)  Thus, we do not have the situation in which Minitab merely received information from a protected computer.  Rather, the complaint sufficiently alleges that defendant Asha was acting at the direction of Minitab when she allegedly accessed plaintiff's protected computer and stole plaintiff's trade secrets.  Therefore, we conclude that Minitab may be held liable for the CFAA violation.  See Role Models America, Inc. v. Jones, 305 F.Supp.2d 564, 567-68 (D.Md. 2004) ("It would be a different case if Dr. Jones had acted as NSU's agent in accessing information on RMA's computers.  For example, if NSU had told Dr. Jones to send e-mails to the defendant containing various trade secrets and proprietary information belonging to the plaintiff") (citation and internal quotation marks removed).  Therefore, we will deny defendants' motion to dismiss as it relates to Count III of the complaint.

C.  Pennsylvania Criminal Code Claims

Defendants argue that plaintiff does not have authority to charge defendants with crimes under the Pennsylvania Penal Code.  (Rec. Doc. No. 19, at 23-26.) Specifically, defendants argue that private parties may only bring a criminal action if plaintiff receives approval from an attorney for the state.  (Id. at 24.)  In their opposition brief, plaintiff concedes that this is true.  (Rec. Doc. No. 19, at 28-29.) Nevertheless, plaintiff seeks dismissal without prejudice in order to seek approval of their private complaint.  (Id. at 29.)

We agree with defendants that under Rule 506 of the Pennsylvania Rule of Criminal Procedure private parties may only bring a criminal action in Pennsylvania with approval from an attorney for the state.  Furthermore, we note that a plaintiff clearly cannot use a criminal statute as a basis for civil relief unless the statute explicitly permits a party to do so, which does not appear to be the case with any of these crimes.  Therefore, we conclude that we do not have subject matter jurisdiction over Counts IV, V, VI, VII, and VIII of the complaint and will dismiss them.

D.  Intentional Interference with Prospective Economic Advantage

Plaintiff's ninth count of the complaint is labeled as "Intentional Interference with Prospective Economic Advantage."  (Rec. Doc. No. 1, at 66.)  Defendants argue that plaintiff fails to state a claim under this theory of liability because it fails

13

to plead the existence of an actual or prospective contractual relationship that was disrupted by defendants' actions.  (Rec. Doc. No. 19, at 26-29.)

As a preliminary matter, we note this claim is best described under Pennsylvania law as one for tortious interference with contractual relations.  To prevail on such a claim, plaintiff must establish: 1) an existing or prospective contractual relationship with a third party; 2) the purpose or intent to harm the plaintiff by preventing the relationship from continuing or occurring; 3) the absence of privilege or justification on the part of the defendant; and 4) actual damage resulting from the defendant's conduct.  CGB Occupational Therapy, Inc. v. RHA Health Services Inc., 357 F.3d 375, 384 (3d Cir. 2004).

In the complaint, plaintiff alleges that it "had an expectancy in continuing advantageous economic relationships with its current and prospective customers." (Rec. Doc. No. 1, ¶ 272.)  Furthermore, plaintiff alleges that "[h]ad defendants refrained from engaging in the unlawful and wrongful conduct described in this Complaint, there is a substantial probability that Plaintiff would have consummated these sales, licenses and support service contracts."  (Id. ¶ 273.) Plaintiff alleges that "Defendants intentionally interfered with and disrupted these economic relationships by engaging in wrongful acts as described elsewhere in this Complaint" and that "Defendants had no justification in engaging in this conduct."

14

(Id. ¶¶ 275-76.)  Finally, plaintiff alleges that they suffered harm due to defendants' actions.  (Id. ¶ 278.)

We note that it appears that the contacts to which plaintiff refers are apparently with companies who would be purchasing and licensing Minitab's software as well as requiring support for the software.  Thus, plaintiff's theory is that when Minitab stole plaintiff's trade secrets and terminated their contract, plaintiff was no longer able to sell and license Minitab's products and therefore their contracts with these companies were disrupted.

On its face, it appears that plaintiff has pled the required elements of a claim for intentional interference with actual or prospective contractual relations.  Nevertheless, we find that plaintiff's claim fails as a matter of law.  Defendants had an absolute right under the contract to terminate the contract for any reason with thirty-days notice.  (Rec. Doc. No. 1, ¶ 63.)  Furthermore, plaintiff has alleged that defendants' goal in terminating the contract was to sell their products directly to the end-user and cut out the middle man, which was Binary.  (Id. ¶ 16.)  Thus, it appears that defendants were well within their rights to terminate the contract and sell and license their product directly to the users.  Furthermore, upon termination of the contract, plaintiff would no longer retain the right to sell and license defendants' products.  In other words, when defendants terminated the contract,

they likely did interfere with existing and potential contracts plaintiff had with

users of defendants' products, but defendants had a right to do so under the

contract.  In fact, we find that it is likely the case that any time a producer of an

item cuts out the middleman, it will interfere with the middleman's existing and

potential contracts to sell that item.   Furthermore, we believe the allegations that

defendants may have accomplished this goal by stealing plaintiff's trade secrets is

irrelevant to our consideration of this claim.  Even if defendants stole plaintiff's

trade secrets, this does not negate the fact that defendants clearly had a right to

terminate the contract and sell and license their product directly to the end user.

Any wrongdoing that may have facilitated plaintiff's ability to terminate the

contract can be adequately addressed by challenging the legality of the underlying

act, which plaintiff has done in this case.  Therefore, we find that plaintiff has

failed to state a claim for tortious interference with contractual relations and will

dismiss Count IX of the complaint.

E.  Negligent Interference with Prospective Economic Advantage

Plaintiff's tenth claim is labeled as "Negligent Interference with Prospective

Economic Advantage."  (Rec. Doc. No. 1, at 68.)  In this count of the complaint,

plaintiff claims that defendants negligently interfered with what appears to be the

same contracts discussed in Count IX of the complaint.  We find that this claim

fails for the same reasons we have already concluded that plaintiff's claim for

intentional interference with prospective economic advantage fails.  Furthermore,

we also note that we agree with defendants that Pennsylvania law does not

recognize such a tort when the losses claimed are purely economical.  (Rec. Doc.

No. 19, at 30.)  In <u>Aikens v. Baltimore & O. R. Co.</u>, 501 A.2d 277, 278 (Pa. Super.

Ct. 1985), the Pennsylvania Superior Court expressly adopted the Restatement

(Second) of Torts § 766C.  Section 766C states that "[o]ne is not liable to another

for pecuniary harm not deriving from physical harm to the other, if that harm

results from the actor's negligently (a) causing a third person not to perform a

contract with the other, or (b) interfering with the other's performance of his

contract or making the performance more expensive or burdensome, or (c)

interfering with the other's acquiring a contractual relation with a third person."

This count of the complaint appears to seek liability on exactly the type of

negligent conduct discussed in § 766C.  Therefore, we will dismiss Count X of the

complaint.


F.  Unfair Competition

        Defendants also take issue with Count XI of the complaint, which sets forth

a claim based on unfair competition.  Specifically, defendants argue that plaintiff

and defendants are not competitors and therefore cannot be held liable for unfair

competition as matter of law.  (Rec. Doc. No. 19, at 31-33.)  Pennsylvania

recognizes a common law claim of unfair competition as it exists under the

Restatement (Third) of Unfair Competition.  <u>Air Products and Chemicals, Inc. v.</u>

<u>Inter-Chemical, LTD., et al.</u>, Civ. No. 03-6140, 2003 WL 22917491, at * 12

(E.D.Pa. Dec.2, 2003) (Davis, J.); <u>Fresh Made, Inc. v. Life Way Foods</u>, Civ. No.

01-4254, 2002 WL 31246922, at * 9 (E.D.Pa. Aug. 9, 2002) (McLaughlin, J.);

<u>Synthes (USA) v. Globus Med., Inc.</u>, Civ. No. 04-1235, 2007 WL 2043184, at * 9

(E.D.Pa. July 12, 2007) (Stengel, J.).  The Restatement (Third) of Unfair

Competition recognizes several types of claims that may give rise to a claim of

unfair competition: 1) deceptive marketing; 2) infringement of a trademark; 3)

appropriation of trade secrets; or 4) acts or practices actionable under federal or

state statutes.  <u>Id.</u> § 1.

    At first glance, it appears that plaintiff has stated a claim for unfair

competition because it has alleged that defendants misappropriated trade secrets.

Nevertheless, we find that plaintiff's unfair competition claim fails as a matter of

law.  This is because we agree with defendants' argument that plaintiff and

defendants are not competitors and therefore defendants cannot be found to be

unfairly competing with plaintiff.  Although Minitab allegedly misappropriated

18

Binary's trade secrets, it allegedly did so in order to cut out Minitab as the middle man and sell its product directly to the end-users.  There is no allegation in the complaint that Minitab opened offices in India for any purpose other than simply selling and licensing its own products to the end-users.  Thus, Binary and Minitab would not be competing by attempting to sell and license other software companies' products to end-users.  Similarly, despite plaintiff's argument that the "parties are now competing for customers for Minitab's products and licenses" (Rec. Doc. No. 27, at 37), we note that the contract between Minitab and Binary specifically states that once the agreement is terminated, Binary must immediately cease selling and promoting Minitab's products.  (Rec. Doc. No. 1, Ex. A, § 5.2.) Thus, Binary and Minitab are not in competition in selling and licensing Minitab's products to end-users.  Therefore, we find that Minitab and Binary are not competitors as a matter of law and therefore plaintiff's claim of unfair competition fails.

Finally, we note that plaintiff has requested leave to amend this portion of the complaint in the event that we find that it has failed to state a claim of unfair competition.  (Rec. Doc. No. 27, at 35.)  Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires."  Nevertheless, we will not grant plaintiff's leave to amend this portion of

the complaint.  This is because we believe that granting leave to amend this portion

of the complaint would be futile.  We have just discussed in detail that plaintiff's

unfair competition claim fails because Minitab and Binary were not competitors as

a matter of law.  No amendment will change the fact that Binary was not permitted

to sell Minitab's products once Minitab elected to terminate the agreement.

Similarly, an amendment to allege that Minitab was setting up offices in India not

only to sell its own products, but to sell other software companies' products as

well, would clearly be a manufactured allegation in an attempt to permit plaintiff's

unfair competition to survive.  The facts have clearly alleged that Minitab was

simply trying to cut out Binary as a middle man, not enter the Indian market in

competition with Binary.  Therefore, we will not permit plaintiff to amend this

portion of the complaint and will dismiss Count XI of the complaint.

G.  Procuring Information by Improper Means

Defendants argue that plaintiff's claim of procuring information by improper

means attempts to state a claim for misappropriation of trade secrets under

Pennsylvania.  (Rec. Doc. No. 19, at 33.)  Furthermore, defendants argue that such

a claim must be brought under the Pennsylvania Uniform Trade Secrets Act.  (<u>Id.</u>

at 34.)  We agree.  Section 5308(a) of the Pennsylvania Uniform Trade Secrets Act

specifically states that the act "displaces conflicting tort, restitutionary and other

law of this Commonwealth providing civil remedies for misappropriation of a trade secret." 12 Pa. C.S.A. § 5308(a). Furthermore, we note that plaintiff has conceded that this count of the complaint has been preempted by the act. (Rec. Doc. No. 27, at 38.)

Nevertheless, plaintiff seeks leave to amend this count to allege a cause of action under the statute. As we have mentioned, Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires." Because it appears that plaintiff will be able to state a claim under the act by amending its complaint, and because defendants do not appear to object in their reply brief to plaintiff's request to amend, we will permit plaintiff to amend this portion of the complaint. We note that plaintiff's amended complaint must stand alone and be separate and complete from the original complaint. Furthermore, we will not permit plaintiff to amend any other portions of the complaint, and therefore the changes in the amendment should only be evident under Count XII of the complaint.

## H.  Unjust Enrichment

Defendants argue that plaintiff's claim for unjust enrichment fails because plaintiff has failed to allege any benefit conferred upon defendants. (Rec. Doc. No.

19, at 34-35.)  Defendants also argue that this claim fails because the relationship

between the parties is founded in contract.  (Id. at 35-36.)  In order to establish a

claim of unjust enrichment under Pennsylvania law, a plaintiff must establish that:

1) the plaintiff has conferred benefits on the defendant; 2) the defendant has

appreciated the benefits; 3) acceptance and retention of such benefits when it

would be inequitable for the defendant to retain without payment.  Styer v. Hugo,

619 A.2d 347, 350 (Pa. Super. Ct. 1993).

    As to defendants' first argument, we believe that plaintiff has clearly alleged

a conferral of benefits in the form of the trade secrets that were allegedly stolen by

defendants.  Therefore, we will reject this argument.  As to defendants' argument

that the relationship between the parties is grounded in contract, we also find that

this argument fails.  Defendants are correct that under Pennsylvania law, the

doctrine of unjust enrichment is inapplicable when the relationship between the

parties is founded in contract.  Schott v. Westinghouse Elec. Corp., 259 A.2d 443,

448 (Pa. 1969); Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d

Cir. 1987).  The problem with applying this rule to the instant case is that although

the parties had a contract governing defendants' selling and licensing plaintiff's

products, there was no contract governing the trade secrets that were allegedly

stolen from plaintiff by defendants.  The purpose behind barring recovery for

unjust enrichment when there is a contract is that the contract would govern the conferral of benefits.  This is not the situation we have in the instant case and we will therefore decline to dismiss Count XIV of the complaint.

Finally, we note that as we have already mentioned, the Pennsylvania Uniform Trade Secrets Act specifically states that the act "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret."  12 Pa. C.S.A. § 5308(a).  Although this preemption seemingly would require dismissal of plaintiff's unjust enrichment claim as well as its conversion claim (Count XIII), we note that these claims are permitted to stand due to the fact that plaintiff may still recover under these theories in the event that the allegedly stolen information does not constitute a "trade secret" under the act.  Cenveo Corp. v. Slater, Civ. No. 06-2632, 2007 WL 527720, at * 3 (E.D.Pa. Feb. 12, 2007) (Golden, J.) (stating "that the cases holding that the Trade Secrets Act does not preempt common law tort claims when it has yet to be determined whether the information at issue constitutes a trade secret take the better approach").

I.  Fraudulent Inducement

Defendants also claim that plaintiff's fraudulent inducement claim is barred by Pennsylvania's "Gist of the Action" doctrine.  (Rec. Doc. No. 19, at 36-39.)

They also argue that plaintiff has failed to state a claim for fraudulent inducement. (Id. at 39-42.)

In order to establish a claim of fraudulent inducement, a plaintiff must establish: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance.  Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005) (citation omitted).

Plaintiff alleges that prior to completion of the contract on March 31, 2007, defendants renewed the contract for an additional year, which would last until March 31, 2008.  (Rec. Doc. No. 1, ¶ 326.)  It also alleges that "[d]efendants made representations to [plaintiff] that they were very pleased with [plaintiff's] performance and were looking forward to continue to work with [plaintiff] in promoting and selling their products and services in India."  (Id., ¶ 327.)  It alleges that defendants had no intention of honoring this extension but were merely buying time while Minitab attempted to steal trade secrets and open its own office in India. (Id. ¶ 32.)  Relying on these representations, plaintiff invested time, resources, and money to promote and sell defendants' products and services over the course of the

next year.  (Id. ¶ 329.)  Finally, plaintiff alleges that these efforts were wasted when defendants terminated the contract because much of the investment was done up-front.  (Id.)

We believe that plaintiff has successfully stated a claim for fraudulent inducement.  Plaintiff's allegations are sufficient to show a material representation in that defendants were pleased with plaintiff's performance and were looking forward to continuing to work with plaintiff.  This is clearly a representation and is also material due to the fact that it was made at the time the parties were negotiating the renewal of the contract.  Furthermore, plaintiff has alleged that these statements were made falsely because at the time they were made, defendants were not looking forward to continuing to work with plaintiff but rather were already planning to steal plaintiff's trade secrets and open up their own office in India.  Furthermore, plaintiff has sufficiently alleged that these statements were made with the intent of misleading plaintiff into relying on it because they were made at the time the parties were renewing the contract and presumably in order to reassure plaintiff of the stability of the parties' relationship.  Finally, plaintiff has alleged that it relied on the misrepresentations and was injured when it invested time, resources, and money up-front in order to promote and sell defendants' products and services.  Therefore, we find that plaintiff has sufficiently stated a

claim for fraudulent inducement.

We now turn our consideration to whether this claim is barred by the 'Gist of the Action" doctrine.  Although not expressly recognized by the Pennsylvania Supreme Court, the Third Circuit has predicted that Pennsylvania would adopt the "Gist of the Action" doctrine as set out by Pennsylvania's Superior Court. Williams v. Hilton Group PLC, 93 Fed.Appx. 384, 385 (3d Cir. 2004).  This doctrine is designed to maintain a distinction between breach of contract claims and tort claims by barring a plaintiff from recasting breach of contract claims as tort claims.  eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  The reason for the distinction is because a tort claim is created by a breach of a duty imposed as a matter of social policy, while a contract claim is created by a breach of a duty imposed by mutual agreement.  Id.  The critical question is whether the tort claims are "inextricably intertwined" with the contract claims or whether the tort claims are "tangential" to the contract.  Id. at 21.  Thus, the doctrine cannot be evaded by merely pleading that the defendant acted negligently, recklessly, or intentionally if the gravamen of the claim is that the defendant failed to perform a promise.  Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc., 40 F.Supp.2d 644, 651 (W.D.Pa. 1999) (citing Factory Market, Inc. v. Schuller Int'l, Inc., 987 F.Supp. 387, 394 (E.D.Pa. 1997).

As a preliminary matter, we note that we must exercise caution when considering whether to dismiss a claim based on the "Gist of the Action" doctrine at the motion to dismiss stage of the litigation.  Caudill Seed & Warehouse Co. v. Prophet 21, Inc., 123 F.Supp.2d 826, 834 (E.D.Pa. 2000) (Reed, J.)  Such a determination can be factually intensive and may require discovery.  Haymond V. Lundy, Civ. Nos. 99-5015, 99-5048, 2000 WL 804432, at * 8 (E.D.Pa. June 22, 2000) (Shapiro, J.) (citations omitted).  Furthermore, we note that unlike fraud in the execution of the contract, fraud in the inducement of a contract may not necessarily be barred by the "Gist of the Action" doctrine.  See Advanced Tubular Prods. v. Solar Atmospheres, Inc., 149 Fed. Appx. 81, 85 (3d Cir. 2005) ("Pennsylvania courts have recognized that the gist of the action doctrine may not cover fraud in the inducement.").  Finally, we note that plaintiff has not brought a breach of contract claim in the instant complaint.  This is likely because the contract could be terminated by either party for any reason upon thirty days written notice.  (Rec. Doc. No. 1, ¶¶ 6, 63.)  Thus, if would be a strange result if plaintiff was not able to bring a fraudulent inducement claim because of the "Gist of the Action" doctrine when there is no breach of contract claim.  In other words, the "gist" of this action is not a breach of contract claim.

Finally, although the instant contract contains an integration clause that

states that the contract "supercedes all prior agreements, proposals and communications between the parties hereto . . ." (Rec. Doc. No. 19, Ex. A, § 7.10), we do not believe this changes our analysis. Although the integration clause may serve to bar plaintiff from using prior statements to prove the terms of the written contract in a breach of contract claim, it would not bar it from using prior statements to prove fraud in a fraudulent inducement claim. Therefore, we will decline to dismiss this claim based on the 'Gist of the Action" doctrine.

## J.  Breach of Fiduciary Duty Claim

Defendants allege that plaintiff's breach of fiduciary duty claim fails because it is also barred by the "Gist of the Action" doctrine and because plaintiff has failed to plead the required elements of such a claim. (Rec. Doc. No. 19, at 42-46.) We agree that despite plaintiff's conclusory allegation that defendants owed plaintiff a fiduciary duty (Rec. Doc. No. 1, ¶¶ 334-35), plaintiff cannot establish a claim for breach of fiduciary duty because no fiduciary duty exists as a matter of law.

Under Pennsylvania law, a fiduciary duty exists when there is a "special relationship" which is one "involving confidentiality, the repose of special trust or fiduciary responsibilities." eToll, 811 A.2d at 22. Furthermore, "it generally involves a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over

the other." Id.  No such relationship exists in the instant case.  The parties have

simply entered into a commercial, arms-length contract with one another and we

find that this is insufficient to create a fiduciary relationship.  See id. (commenting

that the plaintiff failed to cite any cases in which a fiduciary relationship was found

to exist between parties to an arms-lengths business transaction).  If we were to

rule that the contract in the instant case created a fiduciary duty, every breach of

contract would necessarily involve a breach of fiduciary duty.  Id. (stating that "[i]f

parties to routine arms length commercial contracts for the provision of needed

goods or services were held to have a 'special relationship,' virtually every breach

of such a contract would support a tort claim.).  Therefore, we find that plaintiff's

claim for breach of fiduciary relationship fails as a matter of law and will dismiss

Count XVII of the complaint.

K.  Civil Conspiracy Claim

Defendants argue that plaintiff's civil conspiracy claim fails because this

claim is barred by the "Gist of the Action" doctrine, because plaintiff has failed to

plead malice as required to state such a claim, and because the torts underlying

plaintiff's conspiracy claim fail so the conspiracy necessarily fails as well.  (Rec.

Doc. No. 19, at 46-49.)  To establish a claim for civil conspiracy under

Pennsylvania law, a plaintiff must prove:  1) a combination of two or more persons

acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage. Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (citing Strickland v. Univ. of Scranton, 700 A.2d 979, 987-988 (Pa. Super. Ct. 1997)). Furthermore, the Pennsylvania Supreme Court has also required that such a claim require proof of malice, or intent to injure. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).

As to defendants' argument that this claim is barred by the "Gist of the Action" doctrine, we find that it is not. As we have mentioned, plaintiff has not brought a breach of contract claim. Furthermore, even if it did, we would not find this claim to be barred by the "Gist of the Action" doctrine. Plaintiff has alleged that defendants conspired to steal plaintiff's trade secrets, convert plaintiff's information (in the event the information is deemed not to be a trade secret), and fraudulently induce plaintiff to enter into a contract. None of these claims are "inextricably intertwined" with the contract. Therefore, we find that the civil conspiracy claim in the instant case is not barred by the "Gist of the Action" doctrine.

As to defendants' argument that plaintiff has failed to plead malice, we also

disagree.  As plaintiff correctly points out, it has alleged that defendants' conduct was malicious in numerous paragraphs of the complaint.  (Rec. Doc. No. 1, ¶¶ 219, 231, 246, 251, 256, 262, 265, 269, 280, 299.)  For example, plaintiff alleges that defendants "willfully and maliciously accessed Plaintiff's computer . . . with the intent to obtain unlawful possession of . . . Plaintiff's trade secrets and confidential and proprietary information."  (Id. ¶ 299.)  We find this sufficient to allege malice at this stage of the litigation.

Finally, we disagree with defendants' argument that each of the underlying torts fails so the conspiracy claim necessarily fails.  We have found that plaintiff's claim for fraudulent inducement is sufficient to state a claim.  Similarly, defendants have not challenged plaintiff's claim for conversion.  Finally, we find it highly likely that plaintiff will successfully state a claim for misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act upon amendment.  Therefore, we will reject this as a basis for dismissal of plaintiff's civil conspiracy claim.

L.  Right to An Accounting

Finally, defendants also take issue with plaintiff's claim for "An Accounting."  (Rec. Doc. No. 19, at 49-51.)  Pennsylvania law recognizes two types of accounting: equitable accounting and legal accounting.  Berger &

31

<u>Montague, P.C. v. Scott & Scott, LLC</u>, 153 F.Supp.2d 750, 754 (E.D.Pa. 2001) (Joyner, J.).  In its opposition brief, plaintiff clarifies its complaint and states that it seeks an equitable accounting in order to ascertain the income and gross profits defendants have obtained through their unlawful conduct.  (Rec. Doc. no. 27, at 52.)

The Pennsylvania Superior Court has stated that an equitable accounting is improper where: 1) no fiduciary relationship exists between the parties; 2) no fraud or misrepresentation is alleged; 3) the accounts are not mutual or complicated: <u>or</u> 4) the plaintiff possesses an adequate remedy at law.  <u>A.M. Skier Agency, Inc. v. Gold</u>, 747 A.2d 936, 942 (Pa. Super. Ct. 2000) (citation omitted).  While plaintiff cites <u>Greencort v. Condominium Assoc. v. Greencord Partners</u> for the proposition that it need only show a fiduciary relationship, fraud or misrepresentation, <u>or</u> mutual or complicated accounts, <u>and</u> that no adequate remedy exists at law, we note that <u>Greencort</u> incorrectly states the rule.  2005 WL 2562909, at * 7 (Pa. Com. Pl. Oct. 4, 2005).  Indeed, <u>Greencort</u> cites <u>Rock v. Pyle</u>, which states that "[a]n equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, <u>or</u> the plaintiff possesses an adequate remedy at law."  720 A.2d 137, 142 (Pa. Super. 1998) (emphasis in original).  Based on <u>Rock</u> and <u>A.M. Skier</u>

Agency, a claim for equitable accounting would fail if any of those four factors existed, not all of them.

Because we have already ruled that no fiduciary relationship existed between the parties as a matter of law, plaintiff clearly does not have a right to equitable accounting under Pennsylvania law.  Similarly, we do not understand why plaintiff would not be able to determine the amount of income and gross profits that Minitab has obtained through their wrongful and unlawful conduct through the process of discovery.  Therefore, we will dismiss Count XIX of the complaint.

**CONCLUSION:**

For the reasons stated above, we conclude that plaintiff has failed to state a claim with respect to Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, XVII, XIX and these counts are therefore dismissed.  Plaintiff is given leave to amend Count XII

of the complaint.  The remaining counts are permitted to proceed.


                                <u>  s/ James F. McClure, Jr. </u>
                                JAMES F. McCLURE, JR.
                                United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BINARY SEMANTICS LIMITED,   :
BINARY SEMANTICS, INC.      :
                                   :   Civil Action No. 4: 07-CV-1750
          Plaintiffs,  :
                                   :
    v.                        :
                                   :   (Judge McClure)
MINITAB, INC., et.al.,        :
                                   :
         Defendants. :
                                   :

**O R D E R**

March 20, 2008

In accordance with the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1.    Defendants Minitab, Barbara Ryan, Bruce Pincus, and Patrick Sheehan's motion to dismiss is granted in part and denied in part. (Rec. Doc. No. 18.)

2.    Counts I, II, IX, X, XI, XVII and XIX of the complaint are dismissed for failure to state a claim upon which relief can be granted.

3.    Counts IV, V, VI, VII and VIII are dismissed for lack of subject matter jurisdiction.

4.      Plaintiff is granted leave to amend Count XII of the complaint to state

a claim under the Pennsylvania Uniform Trade Secrets Act.  The

amended complaint must stand alone and be separate and complete

from the original complaint.  Furthermore, plaintiff is only permitted

to amend the complaint as to Count XII.

5.      Plaintiff shall file any amended complaint on or before April 4, 2008.

6.      Defendant need not file an answer to the original complaint, but must

file a timely response to the amended complaint.


   s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge