IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BINARY SEMANTICS LIMITED,   :
BINARY SEMANTICS, INC.   :
                                  :     Civil Action No. 4: 07-CV-1750
               Plaintiffs,   :
                                  :
     v.   :
                                  :     (Judge McClure)
MINITAB, INC., et.al.,   :
                                  :
           Defendants. :
                                  :

**O R D E R**

May 1, 2008

**BACKGROUND:**

On September 25, 2007, plaintiffs Binary Semantics Limited and Binary

Semantics Inc. (collectively "Binary") commenced this civil action with the filing

of a complaint against defendants Minitab, Inc., Barbara Ryan, Bruce Pincus,

Patrick Sheehan, Asha Gopinath Menon, Malvinder Singh, and John Does 1-10.  In

its complaint, Binary set forth causes of action based upon the Racketeer

Influenced and Corrupt Organizations Act (Counts I and II), the Computer Fraud

and Abuse Act (Count III), Unlawful Use of a Computer under the Pennsylvania

Penal Code (Count IV), Computer Theft under the Pennsylvania Penal Code

(Count V), Unlawful Duplication under the Pennsylvania Penal Code (Count VI),

Computer Trespass under the Pennsylvania Penal Code (Count VII), Theft of

Trade Secrets under the Pennsylvania Penal Code (Count VIII), Intentional

Interference with Prospective Economic Advantage (Count IX), Negligent

Interference with Prospective Economic Advantage (Count X), Unfair Competition

(Count XI), Procuring Information by Improper Means (Count XII), Conversion

(Count XIII), Unjust Enrichment/Restitution (Count XIV), Fraud (Count XV),

Fraud/Fraudulent Inducement (Count XVI), Breach of Fiduciary Duty (Count

XVII), Civil Conspiracy (Count XVIII), and claim a for "An Accounting" (Count

XIX).

On December 17, 2007, defendants Minitab, Barbara Ryan, Bruce Pincus,

and Patrick Sheehan (collectively "the Minitab defendants") filed a motion to

dismiss.  (Rec. Doc. No. 18.)  On March 20, 2008, we granted the motion in part,

dismissing Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, XVII and XIX.

On March 27, 2008, plaintiffs filed a motion for reconsideration.  (Rec. Doc.

No. 61.)  Opposing and reply briefs have been filed and the matter is ripe for

disposition.  For the following reasons, we will grant the motion in part.


**DISCUSSION:**

2

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.  Harsco v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) (citations omitted), cert. denied, 476 U.S. 1171 (1986). Therefore, a court may properly grant a party's motion for reconsideration in any of the following circumstances: (1) the development of an intervening change in the law, (2) the emergence of new evidence not previously available, or (3) the need to correct a clear error of law or prevent a manifest injustice.  Max's Seafood Café ex rel. Lou-Ann Inc. vs. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  The granting of a motion to reconsider is an extraordinary remedy and a court should not do so when the motion is merely a re-styling or rehash of issues previously presented. McConocha v. Blue Cross and Blue Shield Mutual of Ohio, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996).  A court should consider neither new evidence nor a new legal theory which could have been presented on the original motion, taking into account due diligence.  Id.  Mere disagreement with the court is a ground for an appeal, not a motion for reconsideration.  Id.

In its motion, plaintiffs argue that our decision to dismiss their claims for Intentional Interference with Prospective Economic Advantage (Count IX), Breach of Fiduciary Duty (Count XVII), and "An Accounting" (Count XIX) was clear error.

A.  Count IX

As we noted in our previous order, plaintiffs' claim for intentional interference with prospective economic advantage is best described under Pennsylvania law as one for tortious interference with contractual relations.  To prevail on such a claim, plaintiff must establish: 1) an existing or prospective contractual relationship with a third party; 2) the purpose or intent to harm the plaintiff by preventing the relationship from continuing or occurring; 3) the absence of privilege or justification on the part of the defendant; and 4) actual damage resulting from the defendant's conduct.  CGB Occupational Therapy, Inc. v. RHA Health Services Inc., 357 F.3d 375, 384 (3d Cir. 2004).  In dismissing this count, we noted that the contracts that plaintiffs alleged were interfered with were with companies who would be purchasing and licensing Minitab's software as well as requiring support for the software.  Therefore, we concluded that although Minitab had interfered with those contracts when it terminated the contract, it had an absolute right to terminate under the terms of the contract.  Furthermore, we stated that the allegations that defendants were only able to terminate the contract after stealing plaintiffs' trade secrets could be adequately addressed by challenging the legality of the underlying act, which plaintiffs had done.

In their motion, plaintiffs claim that our previous order disregarded

plaintiffs' allegations that defendant Asha, acting as an agent of Minitab, asked

some of plaintiffs' employees to "go slow," which means to deliberately take more

time than necessary to complete their tasks/assignments.  (Rec. Doc. No. 61-3, at

3.)  Plaintiffs also claim that we disregarded the manner in which defendants

terminated the contract, which was by sending emails to several of plaintiffs'

customers attributing blame for the termination of the agreement to plaintiffs.  (Id.

at 5.)

        We agree with plaintiffs that their "go slow" allegations do implicate

contractual relations prior to Minitab's termination of the contract.  Yet, we note

that plaintiffs only allege that defendant Menon asked some of plaintiffs'

employees to "go slow," as opposed to alleging that plaintiffs' employees actually

did so and that this caused damage to plaintiffs' contractual relations.

Nevertheless, we will infer from its "go slow" allegation that this occurred and

permit plaintiffs to pursue this claim.

        As to plaintiffs arguments concerning the manner in which the contract was

terminated, we will reluctantly let this theory of the claim proceed as well.  First,

we note that plaintiffs' brief in opposition to defendants' motion to dismiss does

not argue that these allegedly false emails form part of the basis of its tortious

interference with contractual relations claim.  Nevertheless, we agree that if

defendants did send false emails to plaintiffs' customers, this may have interfered

with their contractual relations.  Therefore, we will vacate the portion of our March

20, 2008 order which dismissed Count IX of the complaint.

B.  Counts XVII and XIX

In dismissing plaintiffs' claim for breach of fiduciary duty, we cited the

Pennsylvania Superior Court's decision in eToll, Inc. v. Elias/Savion Advertising,

Inc., 811 A.2d 10 (Pa. Super. Ct. 2002).  The court stated that a fiduciary duty

exists when there is a "special relationship" which is one "involving

confidentiality, the repose of special trust or fiduciary responsibilities."  Id.  at 22.

Furthermore, "it generally involves a situation where by virtue of the respective

strength and weakness of the parties, one has the power to take advantage of or

exercise undue influence over the other."  Id.  Finally, the court found that "[i]f

parties to routine arms length commercial contracts for the provision of needed

goods or services were held to have a 'special relationship,' virtually every breach

of such a contract would support a tort claim.  Id.  Because the parties in the instant

case had simply entered into a routine arms-length business transaction, we ruled

that no fiduciary duty existed as a matter of law.

In its motion for reconsideration, plaintiffs argue that our ruling ignored

their allegations that Binary was an agent of Minitab and therefore a fiduciary duty

6

existed between the parties.  (Rec. Doc. No. 61-3, at 6.)  Under Pennsylvania law,

"an agency relationship is a fiduciary one." eToll, 811 A.2d at 21 (citing Sutliff v.

Sutliff, 528 A.2d 1318, 1323 (Pa. 1987)).  The three elements of an agency

relationship are: 1) the manifestation by the principal that the agent shall act for

him; 2) the agent's acceptance of the undertaking; and 3) the understanding that the

principal is to be in control of the undertaking.  Basile v. H & R Block, Inc., 761

A.2d 1115, 1120 (Pa. 2000) (citations omitted).  Yet, agency results only if there is

an agreement for the creation of a fiduciary relationship with control by the

beneficiary.  Id. (citation omitted).

Despite plaintiffs' conclusory allegations that a fiduciary relationship and

agency-principal relationship existed, we nevertheless maintain that one did not

exist as a matter of law.  As we have already mentioned, there was no special

relationship involving confidentiality, no special trust, and no strong and weak

party in this case.  This was an arms-length business transaction, and a simple

reference to "agent" in the contract (as opposed to an explicit creation of a

fiduciary relationship in the contract) or plaintiffs' conclusory allegations that a

fiduciary relationship existed do not change this transaction , especially under the

Supreme Court's new motion to dismiss standard set in Bell Atlantic Corp. v.

Twombly, which requires that a plaintiff's claim be plausible on its face.  127 S.Ct.

7

1955, 1960 (2007). In other words, it is simply implausible that a fiduciary relationship existed in this case. Therefore, we will deny plaintiffs' motion for reconsideration to the extent it seeks reinstatement of its breach of fiduciary duty claim.

Finally, because our decision that plaintiffs do not have a right to equitable accounting relied on the fact that no fiduciary duty existed as a matter of law, plaintiffs' claim for reconsideration with respect to Count XIX necessarily fails as well.

**NOW, THEREFORE, IT I S ORDERED THAT:**

1.     Plaintiffs' motion for reconsideration is granted in part. (Rec. Doc. No. 61.)

2.     The portion of our March 20, 2008 order which dismissed Count IX of the complaint is vacated and Count IX is permitted to proceed. Furthermore, in light of the fact that plaintiffs have filed an amended complaint after March 20, 2008 that does not contain this count, we ask that plaintiffs file yet another amended complaint that is identical to its newest complaint, except that it contain

Count IX from the original complaint.

                                                          __ s/ James F. McClure, Jr._____
                                                          James F. McClure, Jr.
                                                          United States District Judge